IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 SEP -9 AM 10: 16
U.S. DISTRICT COURT
N.D. OF ALABAMA

JIMMY LAMB, )

    PLAINTIFF, )

VS. ) CV97-H-2145-NE

J & J SOUTH CENTRAL and )
GEORGIA PACIFIC, INC., )

    DEFENDANTS.

ENTERED
SEP - 9 1998

## MEMORANDUM OF DECISION

The Court has before it the June 17, 1998 motion of defendants J&J South Central (J&J)[1] and Georgia-Pacific Corporation (Georgia-Pacific)[2] for summary judgment. Pursuant to the Court's June 22, 1998 order, the motion was deemed submitted, without oral argument, on July 16, 1998.

### I. Procedural History

Plaintiff Jimmy Lamb commenced this action on August 18,

---

[1] Defendants assert in their answer that J&J is not an entity capable of being sued but rather the trademark name of a facility owned by Georgia-Pacific Corporation. (Answer ¶ 4 at 2-3). Because the Court finds that plaintiff has failed to establish a prima facie case in any of his claims, the Court need not reach the issue of J&J's capacity.

[2] Plaintiff incorrectly identified this defendant as "Georgia Pacific, Inc." in the style of the complaint.

42

1997 by filing a complaint in this Court alleging that defendants violated the Federal Age Discrimination in Employment Act (ADEA) and state law through (1) disparate treatment in their failure to promote plaintiff on the basis of age; (2) retaliation against plaintiff for filing an EEOC charge; and (3) intentional infliction of emotional distress. Defendants' June 17, 1998 motion for summary judgment asserts that plaintiff has failed to produce substantial, probative evidence of (1) plaintiff's qualification for the new position and (2) a causal link between the retaliatory conduct and the EEOC complaint. Defendants also argue that their alleged conduct is not so extreme and outrageous as to support a claim for intentional infliction of emotional distress. In his opposition to defendants' motion, plaintiff refutes defendants' arguments regarding the ADEA claims but concedes that defendants are entitled to judgment on the intentional infliction of emotional distress claim.

**II. Standards for Evaluating a Summary Judgment Motion**

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to

discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden

on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 551, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff was born on January 31, 1947. (Lamb Dep. at 9). Plaintiff began his employment with J&J on March 17, 1986 as a general floor employee, which involves sweeping, mopping,

5

emptying and refilling ink buckets, and helping run various machines. (Personnel Card; Lamb Dep. at 37). Plaintiff bid on and was given the janitor position in 1987. (Personnel Card; Lamb Dep. at 46-47). In the fall of 1996, plaintiff was assigned additional landscaping responsibilities. (Buford Aff. ¶¶ 3, 4). In 1996, J&J and United Paper Workers International Union, Local 501 entered into a collective bargaining agreement which provided that J&J would fill "[o]penings for jobs on the bottom of a line of progression or jobs not in a line of progression . . . [with] [t]he employee with greatest plant-wide seniority . . . provided he/she can learn the job and progress to the top job in the line of progression." (Collective Bargaining Agreement at 16-17).

Before or during 1994, Joe Griffin, a supervisor, twice called plaintiff an "old man." (Lamb Dep. at 182-83). In 1994, one of the supervisors referred to plaintiff as a "dumb old janitor." (Lamb Dep. at 185-88). In late 1996, Leonard McCowan, an employee who was not plaintiff's supervisor, called plaintiff a "white-headed old fart." (Lamb Dep. at 174-76). After making the comment, Mr. McCowan called another older employee a "toothless old man." (Lamb Dep. at 177-78).

On October 22, 1996, Georgia-Pacific posted a job bid sheet seeking bids for two newly-created positions, second and third

6

shift shipping coordinator. (Buford Aff. ¶ 5). These new positions would be responsible for monitoring the loading of products and drafting shipping memoranda. (Buford Aff. ¶ 5; Creager Dep. at 45). For this reason, the coordinators had to have experience in and a thorough understanding of the shipping department. (Buford Aff. ¶ 5; Creager Dep. at 45). Plant manager Tony Buford spoke to union president Jerry Seay about the coordinator positions, which Budford suggested should be bargaining jobs. (Buford Aff. ¶ 6). On November 12, Buford and Seay agreed that the positions would be filled only by employees presently working in the Loader and Loader A positions in the shipping department. (Buford Aff. ¶ 6; November 12, 1996 Union-Company Agreement). Pursuant to the agreement, the bid sheet specifically noted that the jobs would be filled only from the Loader and Loader A ranks. (Lamb Dep. at 158).

When the shipping coordinator positions were posted, thirteen employees bid for the job, including plaintiff; only six of these employees had worked previously as a Loader or Loader A. (Buford Aff. ¶ 7). Plaintiff had been a shipping and receiving clerk while employed by Lucky Manufacturing but had not worked as a Loader or Loader A at J&J. (Lamb Dep. at 19-20; Personnel Card). Because one of the two most senior employees meeting the

7

listed requirements declined the position, the most senior and third most senior employees that had worked as a Loader or Loader A received the positions. (Buford Aff. ¶ 8).

On December 23, 1996, plaintiff filed a charge of discrimination with the EEOC, alleging that he was denied the shipping coordinator positions on the basis of age. (Charge of Discrimination; Lamb Dep. at 141-42). Pursuant to company policy, Danny Johnston, plaintiff's immediate supervisor, was not informed of the charge nor did he have any knowledge of the charge until after June 30, 1997. (Buford Aff. ¶ 12; Johnston Aff. ¶ 4). In February or March of 1997, Johnston required plaintiff to work longer work days for two weeks, and Ralph Keel, Johnston's assistant, once required plaintiff to work a weekend without giving plaintiff proper notice. (Lamb Dep. at 193-94, 199-200, 212-14, 223; Johnston Aff. ¶ 3). Plaintiff received overtime pay for these additional hours. (Lamb Dep. at 196, 215, 222). Plaintiff was also asked to do additional assignments, which included cutting out the weeds from two drainage ditches and cutting the grass. (Lamb Dep. at 198, 216-19; Johnston Aff. ¶ 3). Johnston also began criticizing plaintiff's work after the filing of the charge and made plaintiff repaint a bathroom because plaintiff had used the wrong shade of gray. (Lamb Dep.

at 204-12). On June 30, 1997, plaintiff filed a second charge of discrimination asserting retaliation for the first charge. (Second Charge of Discrimination).

## IV. Applicable Substantive Law and Analysis

### A. Disparate Treatment Claim

Under the ADEA, a plaintiff claiming disparate treatment has the burden of proving that age was a determining factor in the employer's adverse decision. <u>Carter v. City of Miami</u>, 870 F.2d 578, 581 (11th Cir. 1989). Initially, a plaintiff must establish of prima facie case in one of three ways: by meeting the four-pronged test set out for Title VII cases in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); by direct evidence of discriminatory intent; or through statistical proof. <u>Carter</u>, 870 F.2d at 581. Because plaintiff did not submit statistical evidence, the Court need only address the first two methods.

A plaintiff may establish a prima facie case with circumstantial evidence by proving that (1) plaintiff is a member of the protected age class; (2) he was subject to adverse employment action, such as failure to promote; (3) plaintiff was qualified for the position for which he was rejected; and (4) that position was filled by a younger individual. See <u>Ramsey v. Chrysler First, Inc.</u>, 861 F.2d 1541, 1543 (11th Cir. 1988).

9

Defendants argue that plaintiff has failed to produce evidence establishing that plaintiff was qualified for the two shipping coordinator positions. Plaintiff contends that the collective bargaining agreement, along with plaintiff's experience as a shipping and receiving clerk at Lucky Manufacturing, produce a genuine issue of material fact as to whether plaintiff was qualified for the shipping coordinator positions. Specifically, plaintiff argues that the collective bargaining agreement, rather than the November 1996 agreement between Seay and Buford, defines the job qualifications at issue.

Plaintiff's argument is internally inconsistent. Plaintiff does not dispute that union president Seay and plant manager Buford agreed as to the qualifications of the new position or that defendants hired in accordance with the listed requirements. Plaintiff has not offered any evidence that he meets those listed requirements or that the decision of Seay and Buford had any kind of age discrimination animus. Plaintiff has not in any way contested the contractual validity of the modification agreed to by Seay and Buford. In other words, plaintiff asks this Court to ignore well established principles of contract law and rule that the terms of an original agreement control where inconsistent with the terms of a mutually agreed upon modification to that

agreement. See, e.g., <u>Mobile Elec. Co. v. City of Mobile</u>, 79 So. 39, 40 (Ala. 1918); <u>see generally</u> <u>Eastern Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l</u>, 861 F.2d 1546, 1550 (11th Cir. 1988) (discussing the role of state contract law in collective-bargaining agreement disputes); <u>Pellicer v. Brotherhood of Ry. & Steamship Clerks</u>, 217 F.2d 205, 206 (5th Cir. 1954) (discussing validity of modifications to collective bargaining agreements). This Court is not so presumptuous. The November 12, 1996 agreement and the bid sheet list the legally relevant qualifications for the job, and plaintiff has produced no evidence to suggest that he meets those qualifications.

Defendant also argues that plaintiff has failed to produce direct evidence of discriminatory intent. "Direct evidence of discrimination [is] evidence which, if believed, would prove the existence of a fact [at issue] without inference or presumption." <u>Carter v. City of Miami</u>, 870 F.2d 578, 581-82 (11th Cir. 1989). Plaintiff contends that the derogatory comments made by J&J employees and prior instances in which plaintiff was passed over for a promotion constitute direct evidence of discriminatory intent. However, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." <u>Id.</u> at 582.

The isolated comments in the present case, at most, suggest discrimination, leaving the trier of fact to infer discrimination from the evidence; by definition, the evidence is circumstantial. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990). Furthermore, plaintiff has conceded that the other conduct of which he complains is time-barred for purposes of establishing a prima facie case. (Pl.'s Br. in Opp'n at 3 n.1).

Rule 56(c) mandates the entry of summary judgment against a plaintiff who fails to make a showing sufficient to establish each element of its prima facie case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In the present case, plaintiff has neither (1) produced direct evidence of a discriminatory intent nor (2) produced any evidence establishing that plaintiff was qualified for the two shipping coordinator positions. For this reason, defendants' motion for summary judgment is due to be granted on the disparate treatment claim.

**B. Retaliation Claim**

A "plaintiff alleging retaliation must establish a prima facie case by showing: (1) a statutorily protected expression; (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993).

Defendants argue that there is no causal link between the alleged adverse action and the EEOC charge because Johnston had no knowledge of plaintiff's first EEOC charge until the retaliation charge was filed.

The causal link element requires plaintiff, at a minimum, to establish that Johnston was actually aware of the EEOC charge at the time of the adverse employment action. See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). The burden on plaintiff at the summary judgment stage is to produce at least some evidence of that awareness; the only evidence before the Court is to the contrary. Thus, while plaintiff has complained to the Court of how humiliating the additional work was, plaintiff has failed to produce any evidence tending to show that plaintiff's supervisor, Johnston (who allegedly imposed the additional work in retaliation for the first EEOC charge), knew of the December 23, 1996 EEOC charge until after the June 30, 1997 EEOC retaliation charge was filed. Rather, plaintiff argues that Johnston and Buford were close friends and that Buford (who was aware of the first EEOC charge) "would likely have informed Johnston." (Pl.'s Br. in Opp'n at 17). Unsubstantiated assertions and arguments are not enough to withstand a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317,

13

323-24 (1986); <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1529 (11th Cir. 1987). Plaintiff has failed to produce any direct or circumstantial evidence supporting an inference that Johnston knew of plaintiff's first EEOC charge at the time in question, and defendants are entitled to judgment as a matter of law on the retaliation claim.³

**C. Intentional Infliction of Emotion Distress Claim**

Plaintiff has conceded that defendants are entitled to judgment as a matter of law with respect to the claim for intentional infliction of emotional distress. (Pl.'s Br. in Opp'n at 19). Therefore, defendants' motion for summary judgment is due to be granted on the state law tort claim.

In summary, the Court concludes that plaintiff has failed to establish a prima facie case in both federal law claims, thereby entitling defendants to judgment as a matter of law. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Plaintiff has also conceded that he has no valid state law tort claim. A separate order in accordance with this memorandum of decision will be

---

³ Defendants also argue that plaintiff has not shown that defendants' conduct constituted an adverse employment action. Because plaintiff has not established a causal link between the alleged conduct and the first EEOC charge, the Court need not reach that issue.

entered.

DONE this  9th  day of September, 1998.

                                                   _/s/ James H. Hancock_
                                                   SENIOR UNITED STATES DISTRICT JUDGE